FREDERICK C. FESTNER, PLAINTIFF IN ERROR, v. THE OMAHA & SOUTHWESTERN RAILROAD, DEFENDANT IN ERROR.

1. **Verdict Sustained.** On the facts proved, *Held*, That the verdict is sustained by a preponderance of the evidence.

2. **Argument of Attorney.** An attorney will not be permitted in the argument of a case to the jury to make assertions or insinuations of the existence of facts not in evidence. If he do so the verdict may be set aside; but to authorize the setting aside of the verdict the statements must have been of such a character as may reasonably be supposed to have influenced the jury.

ERROR to the district court for Douglas county. Tried below before NEVILLE, J.

*A. C. Wakeley* and *A. N. Ferguson*, for plaintiff in error.

*C. J. Greene*, for defendant in error.

MAXWELL, J.

In January, 1882, the plaintiff was the owner of lots 7 and 8 in block 154, in the city of Omaha. There was a dwelling-house on lot 7, in which the plaintiff with his family resided. At that time the defendant instituted proceedings in condemnation of right of way and for depot grounds. Commissioners were appointed, damages assessed, and the property condemned. From the assessment of damages thus made the plaintiff appealed to the district court, where the jury rendered a verdict in his favor for the sum of $5,250. The plaintiff now brings the cause into this court on error.

The errors relied upon will be considered in their order. *First*, "Error in the assessment of the amount of recovery."

One James F. Morton, a witness called by the plaintiff, testified that lot 8 was worth from $800 and not to exceed $1,000, and that lot 7 was worth at least $3,000. Byron Reed placed the value of lot 8 at from $1,000 to $1,200, and lot 7 at $2,500, without the improvements. M. G. McKoon, whose deposition was taken in California, testified that the value of lot 7 was $2,500 to $2,600, and lot 8 was $800. Other witnesses testified on behalf of the plaintiff, but none of them estimated the value of the lots in question as high as those named above.

On the behalf of the defendant, I. S. Hascall testified that the value of lot 8 was about $600, and lot 7 from $1,400 to $1,500. George Smith, county surveyor of Douglas county, testified that the value of lot 7, without the improvements thereon, was $1,200, and lot 8 $400. Six other witnesses testified to substantially the same values as Smith.

The plaintiff, after the condemnation proceedings, seems to have purchased the house on lot 7, and removed the same to other lots where it was repaired and made suitable

for a house. A number of witnesses testified to the value of this house, some of whom had not seen it until after removed. They estimated the value at from $4,380 to $5,360. Benjamin A. Fowler, an architect, called by the plaintiff, estimated the value, "exclusive of the basement," at $3,400. He afterwards stated that it probably was worth five per cent less in January, 1882. George Smith, above referred to, who was one of the original appraisers, testified to the condition of the premises and the character of the improvements when the condemation took place. He states (page 44 of record): "We took the dimensions of all the houses upon all the grounds in the manner by which we arrived at the valuation. We made an estimate of the amount of material in it by its dimensions, and estimated both the material and about what labor had entered into that building and all other buildings of any kind on the ground." *    *    *    *

Q. What, in your judgment, was the value of that house as it stood; of the veneered house at that time?

A. I put it at about $2,800 to-day.

In this he is sustained by other witnesses, and in our view a preponderance of the testimony fixes the value of the improvements, including the house, at not far from $3,000, and of the lots at about $2,000. As the verdict was for a sum in excess of the aggregate of these sums, the first assignment of error is not well taken.

*Second.* During the argument of the cause to the jury the attorney for the defendant said: "Had I been permitted under the rules of evidence, we could have shown that the company not only made him liberal offers, but had in fact sold to plaintiff for the small sum of five hundred dollars this dwelling which they had paid thirty-two hundred dollars for." The record recites that "at this point the plaintiff's counsel excepted to the above remark of said Green, and requested the court to have the words taken down, for the reason that the evidence offered

in that regard was ruled out by the court. The court instructed Mr. Green not to go outside of the evidence in the argument, and that the evidence tendered in that regard was refused, and that the jury had no right to consider it, and the counsel no right to comment upon it, and the counsel, Green, refrained from further comment upon that matter."

The testimony shows that the plaintiff had become possessed of the house in question from the railroad company, but the price paid for it was properly excluded. An attorney in his argument to the jury must confine his statements to the facts proved. He cannot be permitted even inferentially to assert a fact bearing upon the case which there is no testimony to sustain. Within the limits of the testimony the right of argument, illustration, and comment is free; but he has no right and he should not be permitted to make assertions not warranted by the testimony.

As was said in *Cleveland Paper Co. v. Banks*, 15 Neb., 22: "The rights of parties are to be determined from the evidence, and an attorney in arguing a case to a jury must confine the discussion of facts to those proved. If he can be permitted to make assertions of facts or insinuations of the existence of facts not supported by the proof, there is danger that the jury will lose sight of the issue or be influenced by the misstatement to the prejudice of the other party." In that case the question at issue was the individual liability of the defendant upon a certain alleged contract for paper furnished to a printing corporation of which he was president; yet his attorneys persistently offered to prove that the secretary of the corporation had embezzled its funds, leaving the inference that the paper purchased had come into his hands and been appropriated. This testimony was ruled out, yet on the argument the substance of it was stated to the jury. That the statement was prejudicial in that case we have no doubt, and where such is the case the party will not be permitted to profit

by his breach of duty, but the verdict will be set aside. To authorize the setting aside of the verdict, however, the words spoken must be of such a character as may reasonably be supposed to have influenced the jury. The words spoken in this case do not appear to have had that effect. While the statement was highly improper, yet the jury evidently well knew that the price which the plaintiff paid the railroad company for the house had nothing to do with the case. The trial judge evidently did not consider them of so prejudicial a character as to affect the verdict, and the verdict itself is evidence that they did not have that effect. It is apparent that substantial justice has been done, and the judgment is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.