CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V. GEORGE KELLOGG.*

FILED MARCH 3, 1898. No. 7797.

1. **Master and Servant: DEFECTIVE APPLIANCES: INJURY TO SERVANT: PLEADING.** In a suit for damages by a station agent of a railroad company against it for injuries he had sustained while attempting to set a defective brake on one of its cars the petition does not fail to state a cause of action because it does not aver that the railroad company knew of the defective condition of the brake, or that the brake had been out of repair for such a length of time that the railroad company, by the exercise of ordinary care, could have discovered its defective condition.

2. ——: ——: ——: **KNOWLEDGE OF DEFECTS.** That the brake became out of repair a short time before the accident, and that the railroad company had no knowledge of its defective condition

*Rehearing allowed.

and could not by the exercise of ordinary care have discovered it before the accident, are matters of defense.

3. ———: ———: ———. It is the duty of a master to furnish the servant tools and appliances reasonably safe and fit for the purposes for which they are designed; and if the master neglects to do this, and the servant is injured without fault on his part, the defect in the instrument or appliance not being obvious, the master is liable.

4. ———: ———. It was the duty of a station agent to set the brakes on cars left at his station, but it was not his duty to inspect the brakes on such cars, nor to repair them if he discovered them out of order. *Held*, That the agent had the right to presume that the car brake was in proper condition and reasonably fit for the purposes for which it was designed.

5. ———: Injury to Servant: Negligence: Liability of Master. It is not the law, except where made so by statute, that a master is liable to a servant for an injury which the latter has received through the negligence of a fellow-servant.

6. ———: ———: ———: ———. If a car inspector, whose duty it is to keep the brakes in repair, neglects that duty, and his co-servant, for instance a station agent, is injured by that neglect, the railway company is liable for such injury; but the reason is that the relation existing between the inspector and station agent is that of vice-principal and servant, the negligence of the inspector being the negligence of the master.

7. ———: Fellow-Servants. A station agent, whose duty it is to set brakes on cars left at his station, but who is not charged with the duty of inspecting or repairing the brakes, is not a fellow-servant of his co-servant, who is a car inspector and charged with the duty of inspecting and repairing the brakes.

8. Attorneys. The rights and duties of counsel employed to conduct litigation considered and stated in the opinion.

9. Misconduct of Attorney: Review. A litigant, to take advantage of alleged misconduct of opposing counsel, must call the attention of the trial court to such misconduct at the time it occurs, ask the trial court for protection therefrom, preserve in a bill of exceptions the alleged misconduct, with the ruling of the trial court and the exceptions thereto, and present the record of what occurred and the rulings of the trial court as an assignment of error in the proceeding brought here.

10. ———: ———. This court in an error proceeding does not review the conduct of counsel in the case, but reviews the rulings, orders, and judgment of the district court; and if it did not make or refuse to make an order, in reference to the conduct of counsel, this court cannot make one.

11. **Instructions: HARMLESS ERROR.** The charge of the court reviewed, and *held* erroneous, but not prejudicial.

ERROR from the district court of Phelps county. Tried below before BEALL, J. *Affirmed.*

*J. W. Deweese, F. E. Bishop, W. S. Morlan,* and *W. P. Hall,* for plaintiff in error.

*A. J. Shafer, S. A. Dravo,* and *Stewart & Munger, contra.*

RAGAN, C.

The Chicago, Burlington & Quincy Railroad Company has filed a petition here to review a judgment of the district court of Phelps county pronounced against it in favor of George Kellogg.

1. The first argument is that the petition does not state a cause of action. Kellogg in his petition, in substance, alleges: That on the 7th of August, 1892, he was a station agent of the railway company at Bertrand, Nebraska; that it was his duty as such agent to set the brakes on cars left by passing trains on the side tracks at that station to prevent the wind blowing the cars off the side track on the main line; that about 10 o'clock in the evening of said date he went upon a car standing on a side track at his station for the purpose of setting the brake thereon, and that as he turned the brake a wire which connected the brake-chain with the brake-rod broke, precipitating him from the car on the bumpers thereof and injuring him; that he had no knowledge of the defective condition of the brake; that the company had negligently permitted this brake to become and remain out of repair, in this, that the chain which connects the brake with the brake-rod should be fastened to the latter by a half-inch iron bolt; that this had been lost out, and some one had connected the rod and chain with a wire which was wholly unfit for that purpose. It is now insisted that this petition does not state a cause of action because it does not allege that the company knew that

13

the brake was out of repair, had been improperly repaired with a wire, or that it had been in that condition for such a length of time that the company should be charged with notice of its defective condition. We think this argu-ment untenable.. It is the duty of a master at all times to furnish his servant with tools and appliances reasona-bly safe and fit for the purposes for which they are de-signed; and if a servant, where the defect of an appliance is not obvious, and where he has no knowledge of such defect and is not charged with the duty of knowing of such defect, without negligence on his own part, is in-jured while attempting to use in the service of the master a tool or appliance designed for the work in hand, the master is liable for such injury. (*Missouri P. R. Co. v. Baxter*, 42 Neb. 793; *Kearney. Electric Co. v. Laughlin*, 45 Neb. 390.) If this brake had become defective a short time before the accident, if the master did not know of it, and could not, by the exercise of ordinary care, have dis-covered it before the accident, those facts were matters of defense for the master. Since it was not the duty of the station agent to inspect this brake nor to repair it if he found it defective, and since he did not know that the brake was out of order, he had the right to presume that it was in proper condition and reasonably fit for the pur-poses for which it was intended; and the general allega-tion that the railway company had been guilty of negli-gence in permitting the brake to become and remain out of repair, coupled with the other allegations of the peti-tion as to the plaintiff's duty, and his want of knowledge of the defective condition of the brake, rendered the peti-tion invulnerable to demurrer. (*Omaha & R. V. R. Co. v. Wright*, 49 Neb. 456.)

2. A second argument is that the judgment cannot stand because Kellogg's injury resulted from the negli-gence of a fellow-servant. It is true that in the absence of statute the general rule is that a master is not liable to one servant for an injury which he has sustained through the negligence of a fellow-servant. (See the rule stated

and the authorities collated in 7 Am. & Eng. Ency. Law p. 821.  See, also, a statement of the rule and a collation of authorities by Allen, J., in *Wright v. New York C. R. Co.*, 25 N. Y. 562.)  In this case the evidence shows that the railway company has in its employ at various stations along its road car repairers or inspectors, whose duty it is to inspect the cars of the company, the wheels and brakes and other appliances thereof, and if a brake is found out of order to repair it.  The evidence does not disclose that it was the duty of the station agent, Kellogg, to inspect the cars that came to his station, nor, should he discover that a car or an appliance thereof was out of order, that it was his duty to repair it.  The evidence further shows that the brake-beam of a freight car is connected with a brake-rod by a chain, and that this chain is connected with the brake-rod by an iron bolt; that the brake which Kellogg was using at the time he was injured had the rod connected with the chain thereof by a wire totally unfit for that purpose.  How long this bolt had been missing from the brake-rod the evidence does not show.  When, where, or by whom the rod and chain were connected by wire the evidence does not show.  The car was traced from the yards in Kansas City to Bertrand, and the car inspectors testified to having inspected it at Kansas City and at various stations along the line from there to Bertrand, and that they did not observe the defective condition of the brake.  At the time Kellogg was injured the car had been standing for several days on the side track at his station.  From the marks and flattened condition of the wire an inference is justifiable that the wire had been used on the brake for some time before the car reached Bertrand.  We do not intend in this case to lay down, or attempt to lay down, any rule for determining when two servants of the same master are "fellow-servants" within the legal definition of that term.  In *Union P. R. Co. v. Erickson*, 41 Neb. 1, it was held that a section hand in the employ of the railway company and engaged in keeping the track in repair was not

a fellow-servant with another employé of the company engaged in the business of loading coal on the tenders of the company's engines. In that case Erickson had been injured through the neglect of his co-employé to properly load or store the coal on the engine's tender, and it was said: "Employment in the service of a common master is not alone sufficient to constitute two men fellow-servants within the rule exempting the master from liability to one for injuries caused by the negligence of the other. To make the rule applicable there must be some consociation in the same department of duty or line of employment." In *Union P. R. Co. v. Doyle*, 50 Neb. 545, it was held that a section hand in the employ of the railway company, engaged with other employés of the company who were hauling dirt and gravel with a construction train and ballasting the railway track, was not a fellow-servant of the conductor of such gravel train. In that case it was also held: "Where one of several employés of the same master is a vice-principal as to his co-employés or whether all are fellow-servants, is not always a question of fact, nor always a question of law. Generally it is a mixed question of law and fact and to be determined in any case by the particular facts and circumstances in evidence in the case in which it is presented." In the case at bar, if we are to consider that the verdict of the jury includes a finding that Kellogg, the station agent, was not a fellow-servant of his co-employé, the car repairer or inspector, the evidence in the record justifies that finding; and if from the admitted facts it is for us to say as a matter of law whether the station agent and the car repairer or inspector were fellow-servants, then we answer that they were not. In *Morton v. Detroit, B. C. & A. R. Co.*, 46 N. W. Rep. [Mich.] 111, it was held that a brakeman in the employ of the railway company was not a fellow-servant of another employé of the company whose duty it was to inspect and keep in repair the brakes.

3. Counsel for Kellogg, in his argument to the jury

after the close of the testimony, used the following language: "The defendant company forces its parasites to swear in its behalf. The employés of the defendant are surrounded by superintendents and assistant superintendents, who hold them by the neck and say to them: 'Oh, how easy I can drop you, how easy I can drop you.'" It is now insisted that this was such misconduct on the part of counsel for the plaintiff below as calls for a reversal of the judgment rendered. It must be conceded that counsel permitted his zeal for his client to carry him too far; that the language is totally unwarranted by the record and not within the range of the legitimate inferences and deductions which might be drawn from the evidence; that it was calculated to arouse the passions and prejudices of the jury, too easily excited in cases like this, and instead of assisting them to calmly inquire as to whether the plaintiff below had been injured through the negligence of the railway company, and if so, the extent of such injury and what amount of money would compensate him therefor, and render a verdict accordingly, this language was calculated to inspire the jury with a desire to punish the railway company for the injury which its negligence had inflicted upon the plaintiff. That these poisonous shafts of fiery invective did their work we think is manifest from the amount of the $9,000 verdict which the jury did render. Judgments have been often assailed in this court because of the alleged misconduct of counsel for the parties in whose favor the judgments were rendered. See the following cases: *Bradshaw v. State*, 17 Neb. 147; *Cleveland Paper Co. v. Banks*, 15 Neb. 20; *Fitzgerald v. Fitzgerald*, 16 Neb. 413; *Festner v. Omaha & S. W. R. Co.*, 17 Neb. 280; *Bohanan v. State*, 18 Neb. 57; *Missouri P. R. Co. v. Metzger*, 24 Neb. 90; *McClain v. State*, 18 Neb. 154; *Patterson v. Hawley*, 33 Neb. 440; *Bullis v. Drake*, 20 Neb. 167; *Mehagan v. McManus*, 35 Neb. 633; *Cropsey v. Averill*, 8 Neb. 151; *Omaha & R. V. R. Co. v. Brady*, 39 Neb. 27; *Chicago, St. P., M. & O. R. Co. v. Lundstrum*, 16 Neb. 254; *Stratton v. Nye*, 45 Neb.

619; *Roose v. Perkins,* 9 Neb. 304; *Gran v. Houston,* 45 Neb. 813; *Missouri P. R. Co. v. Metzger,* 24 Neb. 90; *Bankers Life Ass'n v. Lisco,* 47 Neb. 340; *Daly v. Melendy,* 32 Neb. 852; *Ashland Land & Live Stock Co. v. May,* 51 Neb. 474; *Angle v. Bilby,* 25 Neb. 595. These cases establish that a lawyer charged with the conduct of a case is invested with certain rights and charged with certain duties. It is his duty to use all honorable means to protect his client's interests; and in argument, within the limits of the evidence and the legitimate deductions and inferences to be drawn therefrom, he may not be limited, but may comment on the conduct and credibility of witnesses and parties to the suit. On the other hand, he must act honorably and fairly with the court, opposing counsel, the jury, and the parties to the litigation. But he may not, in his conduct of the case or in his argument to the jury, go outside the record, the evidence and the legitimate inferences deducible therefrom, and ask questions, make statements or arguments for the purpose of misleading and prejudicing the jury; and if he does so, such misconduct, if properly preserved in the record and assigned here, will cause a reversal of the judgment procured. These cases establish the further proposition that the defeated party in a litigation, in order to take advantage of the alleged misconduct of opposing counsel, must call the attention of the trial court to such misconduct at the time it occurs, ask the trial court for protection therefrom, preserve in a bill of exceptions the alleged misconduct of counsel, with the rulings of the trial court and the party's exceptions thereto, and present the record of what occurred and the rulings of the trial court as an assignment of error in the proceeding brought here. In the case at bar the record discloses that the railway company excepted to the language used by counsel for the plaintiff below. The record does not disclose that the attention of the trial court was called to this language at the time it was used, that the trial

court was asked to cause the counsel to desist from making the argument he did, nor that the court was requested to instruct or admonish the jury to disregard the argument made. In other words, the record does not disclose that the trial court made any ruling whatever upon this conduct of counsel, presumably for the reason that it was not requested to make any, and, therefore, although we think the language used was unjust and prejudicial to the railway company, we cannot reverse this judgment because thereof, since this court, in a proceeding of this kind, does not review the conduct or actions of counsel in the case, but reviews the rulings, orders, and judgment of the district court; and since it did not make an order, nor refuse to make an order, in reference to the conduct of counsel, we cannot make one.

4. The next argument relates to the instructions. At the request of the plaintiff below the court instructed the jury as follows: "Employment in the service of a common master is not alone sufficient to constitute two men fellow-servants within the rule exempting the master from liability to one for injuries caused by the negligence of the other. To make the rule applicable there must be some consociation in the same department of duty or line of employment." The railroad company excepted to this instruction, but the court did not err in giving it, and we only quote it here for the purpose of showing upon what theory the court submitted the case on trial to the jury.

Another instruction given by the court at the request of the plaintiff below, and over the objection of the railway company, was the following: "If you find that the brake on the car in question was repaired in an unsafe manner, and permitted to remain in an unsafe condition through the negligence of some employé of the defendant, on whom the duty of repair and keeping in repair such brake was imposed by the defendant, then under such circumstances the defendant would not be exempt from liability on the ground that such employé was a fellow-servant of plaintiff."

The railway company requested the court to give the following instruction: "If you find from the evidence that the plaintiff was injured as in his petition alleged, and that the defendant railroad company was guilty of negligence, then it is your duty to inquire whether such negligence was on the part of the employés of the railroad company who were fellow-servants of the plaintiff; for if the plaintiff was injured, as in his petition alleged, through the negligence of the employés of the defendant railroad company, who were fellow-servants of the plaintiff, then the plaintiff cannot recover in this action." The court modified the instruction asked as follows: "Provided the fellow-servant referred to herein was not charged by the defendant with the duty of repairing or keeping in repair such appliances;" and as thus modified gave the instruction. The railway company excepted to the refusal of the court to give the instruction as asked and to the giving of it as modified.

It will be observed that the court submitted to the jury as a question of fact whether the plaintiff below, the station agent, was a fellow-servant of his co-employé, the car repairer or inspector. Under the evidence we think the court would have been entirely justified in instructing the jury that the station agent and car repairer were not fellow-servants; but since both parties to this litigation requested that that question might be submitted to the jury, neither of them are in any position to question the ruling of the court in making that submission. It is to be observed, also, that the court told the jury that if the plaintiff's injury was the result of the neglect of the railroad company's car repairer or inspector to repair the brake, and that it was the duty of such inspector to make the repair, then the railway company would be liable for the plaintiff's injury, even if the jury found that the car repairer or inspector and the station agent were fellow-servants.

It must be confessed that these instructions are some-

what confusing. The court nowhere in its charge called the jury's attention to the distinction between co-servants and fellow-servants, but seems to have used the two expressions in the same sense. Of course it is not the law that the railway company is liable for the injury of the station agent if that injury was caused by the neglect of the car repairer or inspector, he then and there being a fellow-servant of the station agent, and in that respect the instructions are erroneous. We do not think, however, that the railroad company was prejudiced by the giving of these instructions, because (1) the evidence conclusively shows that the car inspector or repairer was not a fellow-servant of the station agent; and (2) if the jury had specially found that the two were fellow-servants, the evidence would not sustain the finding, and we therefore presume that the jury found they were not fellow-servants. The effect of the instruction, notwithstanding the language used about fellow-servants, was to tell the jury that if they found that the plaintiff's injury resulted from the negligence of the car repairer or inspector to properly repair the brake and that it was his duty to discover its defective condition and repair it, then the master was liable for the injury. This is the law; but the master's liability in a case like the one at bar does not rest upon an exception to the general rule that a master is not liable to one servant for an injury caused to the latter by the negligence of a fellow-servant. It rests upon the principle that it is the duty of a master to furnish the servant tools and appliances reasonably fit and safe for the performance of the duties required of the servant; and if the master delegates to a servant the selection, inspection, and furnishing of these tools and appliances, such a servant then stands in the place of the master, and such servant's neglect in the premises is the master's neglect; or, applying the rule to the case at bar, the common master delegated to the car inspector the duty of inspecting and repairing these brakes. That

car inspector then in that matter stood in the place of
the railway company itself, and the car inspector's rela-
tion to the station agent was not that of fellow-servant,
but of vice-principal. (See the rule stated and the au-
thorities collated in 7 Am. & Eng. Ency. of Law [1st
ed.] 825.) In *Morton v. Detroit, B. C. & A. R. Co.*, 46 N. W.
Rep. [Mich.] 111, a brakeman was thrown off a car and
killed by the breaking of the chain which connected the
brake-rod with the brake-beam. A link in the chain
parted, and it appeared that this link had never been
welded, but was closed by a "cold shut." In a suit by the
brakeman's administrator it was held that the car in-
spector, whose duty it was to inspect and repair the cars,
was not a fellow-servant of the brakeman and that the
company was liable. This case and all the other cases
just cited rest upon the principle that the car inspector
stood in the place of his principal as regards the brake-
man. Our conclusion therefore is that the railway com-
pany was not prejudiced because of the erroneous fea-
tures in the instruction given by the court to the jury.

JUDGMENT AFFIRMED.