JOHN TERRY v. THE STATE.

No. 3437.   Decided November 26 1906.

**1.—Murder—Manslaughter—Statement of Facts—Motion for New Trial.**

On motion for new trial the statement of facts was properly stricken therefrom upon motion by the State.

**2.—Jury and Jury Law—Instructions to Return Verdict.**

On a trial for murder, where the jury reported after having considered of their verdict for some time that they could not agree, and the court instructed them not to return until a verdict had been agreed upon, the mere understanding of the jury that they were tied up for the term of the court, would not vitiate the verdict.

**3.—Practice on Appeal—Statement of Facts.**

Where a stenographic report was incorporated in defendant's motion for a new trial, and this statement was subsequently used and approved as the statement of facts in the case, there was no error.

**4.—Same—Charge of Court.**

See facts which authorized a charge on manslaughter.

Appeal from the District Court of Houston.   Tried below before the Hon. Benj. H. Gardner.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

Deceased and defendant and others were at a church party on the night of the homicide.  The main State's witness testified: That the party had broken up and most of them had left; that she saw deceased in the door, before she got to the church house, barefooted and bareheaded, and no top shirt on; that she heard him call one of the boys to go home with him to put his clothes on  *  *  *  that he asked his sister what she did with his "pretty," and she said it was in the trunk, and he got it.  *  *  *  The deceased asked witness if he could go home with her; that she refused; that he took hold of her hand and said, "I am going home with you, or else die and go to hell trying." The deceased walked on one side of the witness and the defendant on the other; witness snatched her hand away and told him she did not want his company; that when they came to where the roads forked, the witness' aunt told witness which way to go, and when they turned to go that way the deceased said, "All right, we will all go that way—I'm going or die and go to hell trying." The defendant then asked deceased what was the matter with him, and deceased called him a d—— black s— of a b——, and ran around witness towards the defendant, who shot him three times as fast as he could pull the trigger.  *  *  *  Witness did not see deceased have any knife or firearms; nor did she see what he took out of his trunk when he asked for his "pretty."  *  *  *  The deceased had his hand back under his coat when he advanced upon the defendant.

Defendant testified substantially as the main State's witness; and in addition stated that he was placed in charge of the State's witness and her aunt to take them to the supper and back home; that they, defendant and deceased were perfectly friendly before the homicide; that deceased was jerking at something when he made for defendant; and that defendant thought he was drawing a pistol and shot him in self-defense; that deceased was in the habit of carrying a pistol, etc.

*H. W. Moore* and *J. M. Cook,* for appellant.— Clarkston v. State, 79 S. W. Rep., 304; Newsome v. State, 75 S. W. Rep., 296.

*J. E. Yantis,* Assistant Attorney-General, for the State.

BROOKS, JUDGE. This appellant was given two years in the penitentiary on a conviction of manslaughter. He complains that the court erred in striking from appellant's motion for new trial the statement of facts adduced upon the trial of this defendant. The statement of facts has no place in the motion for new trial. It might be permissible to set out excerpts of the facts, but here appellant filed the entire statement of facts in his motion for new trial. There was no error in the ruling of the court.

Appellant complains because the court charged on manslaughter. There was no error in this: the facts authorized the submission of such a charge.

The third complaint is that the court committed error in forcing the jury to agree upon a verdict. Upon retirement of the jury, on the first ballot, they stood 9 to 3; and then after several ballots, the jury stood 11 to 1; and then reported to the court that it was impossible for the jury to agree, and were retired by the court to further consider their verdict. And the second time came in and reported it impossible to agree. The court then inquired how the jury stood, and was answered that they stood 11 to 1, and that it was thought impossible to agree. At that time the jury had been considering of their verdict twenty or thirty hours, and then the court instructed the jury to retire and consider their verdict, and the foreman of the jury told the court that he thought it was useless to do so; and asked the court, "must the jury again report?" and the jury were instructed not to again return until the verdict had been agreed upon. After this the jury brought in a verdict. Appellant insists that the jury evidently understood, when the court instructed them to retire and not return until the verdict had been agreed upon, that they were tied up for the rest of the session, unless in the meantime they could reach a verdict. The mere understanding, if this be true, of the jury would not vitiate the verdict. The fact that the court informed them not to return until they agreed on a verdict would not be a legitimate or legal basis for concluding that they were tied up forever, or even

during the term of the court. There was no error in the action of the court.

Appellant further complains that the court erred in not awarding him a stenographic transcript of the evidence in this case. Appellant had the court stenographer make up a statement of the facts, and the same was incorporated in defendant's motion for new trial, and this statement was subsequently used and approved as the statement of facts in this case. In this there was no error.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*